UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ALEXANDER WILSON, RONALD BISHOP,
and GABLE SCHNEIDER, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

                -against-

INTERNATIONAL ALLIANCE OF THEATRICAL
STAGE EMPLOYEES LOCAL 52,

                Defendant.
-------------------------------------------------------------------x

          **MEMORANDUM AND ORDER**
          25-CV-2907 (OEM) (LKE)

ORELIA E. MERCHANT, United States District Judge:

    In this labor action, Plaintiffs Alexander Wilson ("Wilson"), Ronald Bishop ("Bishop"), and Gable Schneider ("Schneider") (collectively, "Plaintiffs") sue their local union, Defendant International Alliance of Theatrical Stage Employees Local 52 ("Local 52"), for violations of the Labor Management Relations Act, codified at 29 U.S.C. § 185 ("LMRA § 301"); Employee Retirement Income Security Act §§ 510 and 502(a)(3), codified at 29 U.S.C. § 1140 ("ERISA § 510") and 29 U.S.C. § 1132(a)(3) ("ERISA § 502(a)(3)"), respectively; and retaliation under New York State Human Rights Law ("NYSHRL") § 290, codified at N.Y. Executive Law § 290 *et seq.*  Before the Court is Local 52's fully briefed motion to dismiss Plaintiffs' Second Amended Complaint.[1]  For the following reasons, Local 52's Motion is granted in part and denied in part.

---

[1] *See generally* Second Amended Complaint, Dkt. 21 ("Second Amended Complaint" or "SAC"); Memorandum of Law in Support of Defendant Local 52's Motion to Dismiss the Second Amended Complaint, Dkt. 25-1 ("Motion" or "Mot."); Plaintiffs Ronald Bishop, Alexander Wilson and Gable Schneider's Memorandum of Law in Opposition to Defendant I.A.T.S.E. Local 52 F.R.C.P. 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint, Dkt. 26 ("Opposition" or "Opp'n"); Reply Memorandum of Law in Support of Defendant International Alliance of Theatrical Stage Employees Local 52's Motion to Dismiss the Second Amended Complaint, Dkt. 28 ("Reply"); Plaintiffs' Sur-Reply Memorandum of Law in Further Opposition to Local 52's Fed. R. Civ. P. 12 (b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint, Dkt. 30 ("Surreply").

## BACKGROUND

### A. Factual Background[2]

Plaintiffs are craftsmen who work in film and television production in the New York City metropolitan area. SAC ¶¶ 15, 24-31, 71, 82-84. Bishop and Wilson work as electric technicians, and Schneider works in set dressing and property. *Id.* ¶¶ 24-31, 71, 82-84. Local 52 is a labor organization, serving as "the bargaining unit for seven (7) different crafts, or job categories, in the film and television production industry" in New York City: "Electrical, Property, Grip, Medic, Shop Craft, Sound, and Video." *Id.* ¶¶ 4-5. Local 52 "is the largest New York local" union of the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada ("IATSE"). *Id.* ¶ 4.

As alleged in the Second Amended Complaint, Local 52 distinguishes between three tiers of union membership: (1) "members," who are "formally inducted into Local 52"; (2) "applicants," who "have formally applied to the union but have failed to gain membership"; and (3) "permits," who are neither members nor applicants "but are nevertheless referred for work by Local 52." *Id.* ¶¶ 21-22. Members "work more consistently than applicants and permits, have opportunities for advancement, and are eligible for the Local 52 pension plan, unlike applicants and permits." *Id.* ¶ 23.

Regardless of whether an individual is a Local 52 member, a "Motion Picture Industry" account is created for each worker, which tracks the number of production hours that an individual earns on each production. *Id.* ¶ 38. These production hours are critical because they "determine benefit levels within the union's health benefits and pension plans." *Id.* ¶ 39. Relatedly, the length of time that a worker contributes money to a union benefits plan ties into when an individual can

---

[2] The following facts are taken from the Second Amended Complaint and assumed to be true for the purposes of Local 52's Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

become a member.  *Id.* ¶ 40.  Among other paths to membership, article 7, section 21, of IATSE's Constitution allegedly provides for immediate membership without a vote upon five years of an individual's contributions into a union benefit plan (referred to as having attained "vested status").  *Id.* ¶¶ 40-42; *id.*, Exhibit B at art. 7, § 21, Dkt. 21-2 ("Any person who has achieved vested status in a Local or national defined benefit pension plan shall immediately be taken into membership without a vote.").

Local 52 members may participate in three, separate employee benefits plans: (1) the Motion Picture Industry Pension Plan and Individual Account Plan ("MPI Plan"), (2) the IATSE National Benefit Fund ("IATSE Plan"), and (3) the Local 52 Benefit Trust Fund ("Trust Fund" or "Local 52 Plan").  SAC ¶ 123.  Although applicants and permits contribute, either directly or indirectly, to "all of the employee benefit plans through 2.5% gross wage deductions" and "fees paid to Local 52," they are only eligible to participate in the MPI and IATSE Plans, not the Local 52 Plan.  *Id.* ¶¶ 124-25.  In other words, the Local 52 Plan is "exclusively" for members; applicants and permits are not eligible for and cannot accrue time needed to qualify for Local 52 benefits, despite contributing to them financially.  *Id.* ¶ 133.

### 1.  Bishop

Bishop "first applied to join Local 52 in late 2012.  At that time, he failed his first admissions process, which included a written test and practical skills test."  *Id.* ¶ 18.  Local 52 denied him membership on that basis and permitted him to work for "Local 52 represented productions as an 'applicant.'"  *Id.* ¶¶ 19-20.  He thereafter applied for and failed to gain union membership six more times, in September 2015, February 2017, March 2019, March 2022, May 2022, and November 2022.  *Id.* ¶¶ 25-28.

Meanwhile, Bishop attained "vested status" under article 7, section 21, of the IATSE Constitution on June 30, 2018. *Id.* ¶¶ 50; *id.*, Exhibit D at 2, Dkt. 21-4.[3] Despite that provision ostensibly providing for immediate membership without a vote, Local 52 only allegedly extended an offer of membership to him on April 26, 2024, approximately twelve years after he had first applied for Local 52 membership and six years after he had attained vested status. SAC ¶¶ 56-61; *id.*, Exhibit C, Dkt. 21-3.

After he obtained his membership, Bishop applied for disability benefits under the Local 52 Plan, but his application for disability benefits was denied on August 4, 2025, "because he had not been a member for one (1) year and [did not have] the minimum number of work hours needed to qualify." SAC ¶ 136.

### 2. Wilson

Wilson began obtaining production hours as an electric technician in October 2015. *Id.* ¶ 73. He worked first as a permit and then as an applicant after failing the technical exam for membership in 2018. *Id.* ¶ 74. Wilson allegedly vested into the MPI plan in or around June 2022, *id.* ¶ 77, and like Bishop, Wilson received an email from Local 52 extending him an offer of membership on April 26, 2024, *id.* ¶ 78.

### 3. Schneider

Schneider has worked in Local 52's Set Dressing/Property Department since approximately 2014. *Id.* ¶¶ 82-83.

In September 2019, he sued Local 52 in New York State Supreme Court in Queens County "for discrimination under the NYSHRL and a common law claim for interference with business relations." *Id.* ¶ 88. The state court dismissed Scheider's case on October 6, 2020. *Id.* ¶ 89.

---

[3] When citing this exhibit, the Court refers to the page numbers contained in the automatically generated ECF header.

Schneider attained vested status in or around September 2022. *Id.* ¶ 86. However, he alleges that his lawsuit "caused hard feelings at Local 52," *id.* ¶ 90, such that Schneider has still, to date, not received an invitation to join Local 52, *id.* ¶ 87. Before Schneider initiated his state-court case, Local 52 "committed to allow" him to sit for certain upcoming exams, but after he sued, "Schneider has never been afforded an opportunity by Local 52 to take an exam for membership after initiation of his lawsuit" and has been placed on a "'do not hire/no work' list." *Id.* ¶¶ 92-94. Plaintiffs further allege that Schneider was due to receive an invitation of membership, like Bishop and Wilson did, in April 2024, *id.* ¶ 96, but Local 52 allegedly "retracted the invitation before it was sent," *id.* ¶ 97. Plaintiffs contend that "union leadership" blocked the invitation "because of Mr. Schneider's earlier lawsuit against the union." *Id.* ¶¶ 95-97.

## B. Procedural History

On May 27, 2025, Bishop commenced this action against Local 52, purportedly on behalf of himself and all others similarly situated. *See generally* Complaint, Dkt. 1 ("Complaint" or "Compl.").

Bishop then filed two amended complaints, the first on June 20, 2025, *see generally* Amended Complaint, Dkt. 9 ("First Amended Complaint" or "FAC"), and the second on September 10, 2025, *see generally* SAC. In doing so, Wilson and Schneider joined as additional plaintiffs and the Trust Fund was added as an additional defendant. *See* FAC ¶¶ 1-6; SAC ¶¶ 1-6. The Second Amended Complaint contains four causes of action: breach of contract under LMRA § 301, interference under ERISA § 510, violation of ERISA § 502(a)(3), and retaliation under NYSHRL § 290 *et seq*. SAC ¶¶ 144-59.[4] Plaintiffs request several forms of relief, including class

---

[4] While the first three of these claims—breach of contract under LMRA § 301, interference under ERISA § 510, and violation of ERISA § 502(a)(3)—relate to Plaintiffs generally, the last claim—retaliation under NYSHRL § 290 *et seq.*—relates to Schneider specifically. SAC ¶¶ 144-59.

certification under Federal Rule of Civil Procedure 23; a declaration that Defendants breached article 7, section 21, of the IATSE Constitution; an award of compensatory and consequential damages for breach of the IATSE Constitution; an order for declaratory and equitable relief under ERISA §§ 510 and 502(a)(3); permanent injunctive relief "vis-à-vis Local 52's vested applicant admissions process"; compensatory and emotional distress damages for Local 52's retaliation; reasonable attorneys' fees; pre- and post-judgment interest; and all "such other and further relief as the Court deems just and proper." *Id.* at 21.

On December 10, 2025, Local 52 filed its fully briefed motion to dismiss the Second Amended Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). *See* Mot. at 5-23; Reply at 2-10. Local 52 additionally argues that the Court should strike the Second Amended Complaint's class allegations. *See* Mot. at 23-25; Reply at 10-11.

On December 11, 2025, Plaintiffs filed a motion for leave to file a surreply, *see* Letter from Plaintiffs to the Court (Dec. 11, 2025), Dkt. 29, which the Court granted, *see* Order, dated Dec. 12, 2025. Plaintiffs filed their Surreply on December 23, 2025. *See generally* Surreply.

On December 11, 2025, the parties stipulated to dismiss the Trust Fund as a defendant, *see generally* Stipulation of Voluntary Dismissal of Local 52 Benefit Trust Fund Without Prejudice, Dkt. 27, which the Court so ordered on December 12, 2025, *see* Order Dismissing Party, dated Dec. 12, 2025.

## LEGAL STANDARD

Rule 12(b)(1) requires a district court to dismiss an action for lack of subject-matter jurisdiction "when the district court lacks the statutory of constitutional power to adjudicate it." *Green v. Dep't of Educ.*, 16 F.4th 1070, 1075 (2d Cir. 2021) (per curiam) (quoting *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  The party asserting subject-matter jurisdiction carries "the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.  Courts "constru[e] the complaint in plaintiff's favor and accept[] as true all material factual allegations contained therein." *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

Rule 12(b)(6) requires a district court to dismiss a complaint that fails to state a claim upon which relief may be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  While a complaint need not contain "detailed factual allegations" it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where, as here, a defendant seeks dismissal under both Rule 12(b)(1) and Rule 12(b)(6), courts must consider the Rule 12(b)(1) motion first.  *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, 'the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" (citations omitted) (quoting 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1350 (1969))).

7

## DISCUSSION

Local 52's Motion raises three main issues: (1) whether this Court retains subject-matter jurisdiction over this matter under Rule 12(b)(1), (2) whether Plaintiffs have stated a claim for which relief may be granted under Rule 12(b)(6), and (3) whether Plaintiffs' class allegations should be stricken under Federal Rule of Civil Procedure 23 ("Rule 23").  The Court addresses each in turn.

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

In their Motion, Local 52 advances two theories as to why this Court lacks subject-matter jurisdiction.  First, Local 52 contends that Plaintiffs' claims are preempted under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), which "prohibits district courts from deciding controversies that arise, or arguably arise, under the [National Labor Relations Act of 1935 ("NLRA")], and that are therefore subject to the exclusive jurisdiction of the [National Labor Relations Board ("NLRB")]."  Mot. at 6; *see id.* at 6-9; Reply at 2-5.  Second, it argues that Plaintiffs' second (ERISA § 510), third (ERISA § 502(a)(3)), and fourth (NYSHRL § 290 *et seq.*) claims are barred by LMRA § 301, which "preempts state law in any case involving the interpretation of rights and responsibilities under a collective bargaining agreement, regardless of whether the plaintiff's claims sound in tort or contract."  Mot. at 10 (quoting *Tand v. Solomon Schecter Day Sch.*, 324 F. Supp. 2d 379, 383 (E.D.N.Y. 2004)); *see id.* at 10-13; Reply at 5-6.

In opposition, Plaintiffs assert that this Court retains subject-matter jurisdiction because LMRA § 301 expressly vests federal district courts with jurisdiction in breach-of-contract claims arising out of labor contracts.  Opp'n at 5-7.  They characterize Defendants' preemption argument as "novel," *id.* at 9, adding that it applies to state, not federal claims, and that, in any case,

8

Plaintiffs' NYSHRL claim is not preempted because it is "independent of and not inextricably intertwined with an interpretation of the union constitution," *id.* at 10.

**1.  *Garmon* Preemption Does Not Apply to Plaintiffs' Claims.**

Acknowledging Congress's power to regulate labor relations, the Supreme Court in *Garmon* created a preemption doctrine that requires "the States as well as the federal courts [to] defer to the exclusive competence of the [NLRB]," *Garmon*, 359 U.S. at 245, where "it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [§] 7 of the [NLRA]," codified at 29 U.S.C. § 157, "or constitute an unfair labor practice under [§] 8," codified at 29 U.S.C. § 158, *Garmon*, 359 U.S. at 244; *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985) ("Congressional power to legislate in the area of labor relations . . . is long established."). Defendants argue that, "[r]egardless of the names Plaintiffs give their causes of action, they are fundamentally alleging that Local 52 imposed arbitrary and irrelevant conditions upon becoming a union member" in violation of NLRA § 8(a)(3). Mot. at 8; *see* 29 U.S.C. § 158(a)(3) (codifying NLRA § 8(a)(3) and listing "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization" as an unfair labor practice).

While it is true that the NLRB retains exclusive jurisdiction over activities covered by NLRA §§ 7 and 8, federal courts simultaneously possess subject-matter jurisdiction over suits alleging violations of labor contracts. In LMRA § 301, Congress created an exception to the NLRB's exclusive jurisdiction:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a); *see Smith v. Evening News Ass'n*, 371 U.S. 195, 197 (1962) ("The authority of the [NLRB] to deal with an unfair labor practice which also violates a [labor] contract is not displaced by [§] 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under [§] 301."). For a district court to possess jurisdiction under LMRA § 301, there must be an alleged violation of a contract "between an employer and a labor organization" or "between any such labor organizations," and the dispute must involve "an industry affecting commerce." 29 U.S.C. § 185(a); *see Loc. Union No. 38 v. A&M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc.*, 314 F. Supp. 2d 332, 339 (S.D.N.Y. 2004).

### a. Plaintiffs' LMRA § 301 Claim

Both requirements for district-court jurisdiction are alleged here. In their first cause of action, Plaintiffs assert a violation of the IATSE Constitution. SAC ¶¶ 144-48. The Supreme Court has acknowledged that union constitutions fall within the ambit of LMRA § 301. *See Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 101 (1991) (observing that "§ 301 suits [are] not limited to suits brought by the contracting parties" and that "beneficiaries of provisions of [union constitutions] may bring suit on these contracts under § 301"). The industry involved is the "film and television production industry," SAC at 1, which is an "industry affecting commerce" under LMRA § 301, *see* 29 U.S.C. § 142(1) (defining an "industry affecting commerce" in § 301 as "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce"); *Riccardi v. Unger*, 357 F.2d 91, 95-96 (2d Cir. 1966) (focusing broadly on "all business activities in the same field as the business activities of [the relevant] employers"); *see, e.g., Brinks Prods., Ltd. v. United Scenic Artists, Loc. 829*, 78 Civ. 2929, 1979 WL 1876, at *1

10

(S.D.N.Y. July 13, 1979) (determining that film constituted an "industry affecting commerce").

*Garmon* preemption therefore does not apply to Plaintiffs' LMRA § 301 claim.

### b. Plaintiffs' ERISA Claims

Further, *Garmon* preemption does not apply to Plaintiffs' claims under ERISA §§ 510 and 502(a)(3). ERISA operates independently of the NLRA, governing the administration of most employee benefit plans; it generally does not implicate the protected activity and unfair labor practices included within NLRA §§ 7 or 8. *See Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 552 (1988) (citing *Garmon* and distinguishing between ERISA claims and NLRA claims). Even assuming that Plaintiffs' ERISA claims raised labor issues, however, federal courts may decide such issues that arise collaterally in cases brought under independent federal remedies. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-85 (1985). "ERISA has been held to provide such an independent federal remedy." *See, e.g.*, *Local 812 GIPA v. Can. Dry Bottling Co.*, 98 CIV 3791 LMM & 98 CIV 6774 LMM, 1999 WL 301692, at *5 (S.D.N.Y. May 13, 1999) (citing *Carpenters Loc. Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 519 (5th Cir. 1982)).

Moreover, *Garmon* preemption primarily addresses potential conflicts between state and federal laws, not potential conflicts between federal laws. The Supreme Court has long held that Congress's preemption power stems from the U.S. Constitution's Supremacy Clause, *see Allis-Chalmers*, 471 U.S. at 208, which specifically deals with the relationship between the federal and state governments, *see* U.S. CONST. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the

11

Contrary notwithstanding."). *Garmon* is thus "concerned with the potential conflict of two law-enforcing authorities, with the disharmonies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes." *Garmon*, 359 U.S. at 242; *see also Allis-Chalmers*, 471 U.S. at 213 n.9 ("So-called *Garmon* pre-emption involves protecting the primary jurisdiction of the NLRB, and requires a balancing of state and federal interests."). Its focus is not on a potential conflict between two federal statutes. *Cf. Tufariello v. Long Island R.R.*, 458 F.3d 80, 86 (2d Cir. 2006) ("[T]he preemption doctrine flows from the Constitution's Supremacy Clause, which 'invalidates state laws that interfere with, or are contrary to, federal law.' The doctrine is inapplicable to a potential conflict between two federal statutes." (citation omitted) (quoting *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 414-15 (2d Cir. 2002))). Local 52's argument is thus better framed as preclusion, not preemption, which, under prevailing case law requires Local 52 to establish "a clear congressional intent to preclude, or a positive repugnancy between the two federal statutes." *United States v. Sforza*, 326 F.3d 107, 111 (2d Cir. 2003). Local 52 has shown neither here. *See* Mot.; Reply.

Local 52's arguments to the contrary do not compel a different result. In essence, Local 52 interprets this action as "representational" in nature, asserting that the "real question in this case is about membership, not contractual interpretation." Reply at 3; *see* Mot. at 6-9. It cautions this Court to be "[m]indful" of "artful pleading." Reply at 3. Unlike other circuits, however, this Circuit has not adopted the scrutiny that Local 52 advances. *See, e.g.*, *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 815 F.3d 834, 840-41 (D.C. Cir. 2016) (collecting cases). Acknowledging that Plaintiffs are the "masters of the[ir] complaint," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987) (declining to impose LMRA § 301 preemption to state-law contract claims), and assuming the truth of their allegations, as this Court

12

must on a motion to dismiss, *Donoghue*, 696 F.3d at 173, the Second Amended Complaint asserts that Local 52 breached article 7, section 21, of the IATSE Constitution "by failing to immediately take into membership Plaintiffs and putative class members into Local 52 membership after they qualified for immediate membership because they vested into the union's defined benefit plan," SAC ¶ 146.  Resolving this cause of action will require the Court to interpret the meaning of this contractual provision and whether, under it, Local 52 breached its obligations.    While representational issues may arise in this analysis, federal courts maintain subject-matter jurisdiction in LMRA § 301 cases even where representational issues are involved.  *See Hotel & Rest. Emps. Union Loc. 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 565 (2d Cir. 1993) ("[I]t is wrong to say . . . that the NLRB has *exclusive* jurisdiction over representation issues.  Rather, § 301(a) grants courts concurrent jurisdiction over representation issues arising under a contract.").  As Plaintiffs discuss in their Surreply, Local 52's cited cases are also distinguishable.  Surreply at 5-6.

### c.  Schneider's NYSHRL Claim

*Garmon* preemption also does not bar Schneider's state claim.  When determining whether *Garmon* preemption applies, courts in this Circuit engage in a three-step analysis, which first requires them to "identify[] whether any specific provision of sections 7 or 8 of the NLRA actually or arguably prohibits or protects the conduct that is the subject of state regulation."  *Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 96 (2d Cir. 2006) (quoting *Garmon*, 359 U.S. at 244).  "Broadly stated, sections 7 and 8 govern 'concerted activities' and 'unfair labor practices,' respectively.  Section 7 protects workers' rights to engage in concerted activity, while Section 8 makes it an unfair labor practice for an employer," *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 89 (2d Cir. 2010) (footnote omitted) (citation omitted) (quoting *Bldg. Trades Emps. Educ.*

13

*Ass'n v. McGowan*, 311 F.3d 501, 508 (2d Cir. 2002)), or a "labor organization," 29 U.S.C. § 158(b), to violate the rights set out in NLRA § 7 as well as to "discriminate against an employee," 28 U.S.C. § 158(b)(2).  To fall under the purview of NLRA § 8, "plaintiffs must be alleging that they were retaliated against on the basis of having engaged in 'concerted protected activity.' Concerted protected activity, as defined by Section 7, requires 'that an employee's action be taken for purposes of collective bargaining or other mutual aid or protection.'"  *Domnister*, 607 F.3d at 89 (quoting *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 830 (1984)); *see also* 28 U.S.C. § 157.

Here, Schneider does not allege that he was retaliated against on the basis of having engaged in concerted protected activity.  Rather, he asserts that he was retaliated against for having "filed a lawsuit in New York State Supreme Court, Queens County, against Local 52 for discrimination under the NYSHRL and a common law claim for interference with business relations."  SAC ¶ 88; *see also id.* ¶ 157.  In Schneider's state-court complaint, he contended that Local 52 and an individual agent of Local 52 "intentionally discriminated against and harassed [him] based on race" in violation of New York City Administrative Code § 8-107.  *See* Verified Complaint ¶ 32, *Schneider v. Kastner*, 716010/2019 (N.Y. Sup. Ct. Sep. 18, 2019), Dkt. 1.[5]  This claim therefore differs from those typically preempted under *Garmon*.  *Compare, e.g.*, *Devers v. SNC-Lavalin Generation, Inc.*, 12 CV 3747(RJD)(CLP), 2014 WL 4954623, at *6 (E.D.N.Y. Sep. 30, 2014) (declining to apply *Garmon* preemption where "[t]he thrust of [the] retaliation claims [was] that plaintiffs were terminated for complaining about racial problems at the worksite, not for opposing unfair labor practices of the type addressed by the NLRA")*, with Figueroa-Torres v.*

---

[5] The Court takes judicial notice of this state-court pleading.  *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))).  When resolving a motion to dismiss for lack of subject-matter jurisdiction, the Court may additionally refer to materials outside the pleadings. *Makarova*, 201 F.3d at 113.

*Kleiner*, 20 Civ. 4851 (KPF), 2022 WL 768483, at *8 (S.D.N.Y. Mar. 14, 2022) (applying *Garmon* preemption where the "alleged conduct at the core of Plaintiffs' claim" that "Defendants responded to the filing of the present case by coercing and tricking Plaintiffs into selecting Local 298 as their bargaining representative and then working with Local 298 to develop collective bargaining agreements that would force Plaintiffs to arbitrate their wage-and-hour claims" would, "if proven[,] . . . likely establish at least an arguable violation of the NLRA"); *Gerena v. 10 Sheridan Assocs. LLC*, 13 Civ. 6056(CM), 2013 WL 5880567, at *5 (S.D.N.Y. Nov. 1, 2013) (applying *Garmon* preemption where the plaintiff alleged the defendant "terminated his employment in retaliation for his 'union activities,' which consisted of 'getting the union involved because [the defendant] was requiring [him] to do work beyond the scope of [his] employment'").

Accordingly, *Garmon* preemption does not bar Plaintiffs' claims.

## 2. LMRA § 301 Does Not Preempt Plaintiffs' Second and Third Claims but Does Partially Preempt Plaintiffs' Fourth Claim.

Next, Local 52 argues that LMRA § 301 preempts Plaintiff's Second, Third, and Fourth claims. "[W]hen resolution of a state law claim is 'substantially dependent' upon or 'inextricably intertwined' with analysis of the terms of a [labor contract], the state law claim 'must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) (quoting *Allis-Chalmers*, 471 U.S. at 202, 213, 220). When, by contrast, a state-law claim asserts "'legal rights *independent* of that agreement,' preemption does not occur." *Id.* at 207 (quoting *Caterpillar*, 482 U.S. at 396). A state-law claim is "independent" when "resolving it 'does not require construing the [labor] agreement.'" *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

15

As discussed above with respect to *Garmon* preemption, § 301 does not preempt Plaintiffs' ERISA claims. ERISA confers federal, not state, rights independent of the IATSE Constitution, *Local 812 GIPA*, 1999 WL 301692, at *5, and the Second Circuit has treated them as such, *see, e.g.*, *Am. Fed. of Grain Millers v. Int'l Multifoods Corp.*, 116 F.3d 976 (2d Cir. 1997) (analyzing both § 301 and ERISA § 502 claims in parallel, rather than preempting the plaintiffs' ERISA claims).[6]

Plaintiffs' NYSHRL claim, however, is partially preempted by LMRA § 301. To establish retaliation under the NYSHRL, a plaintiff must first state a prima facie case of retaliation. This requires four elements: (1) whether he "has engaged in protected activity," (2) whether his union "was aware that []he participated in such activity," (3) whether he "suffered an adverse employment action based upon [his] activity," and (4) whether "there is a causal connection between the protected activity and the adverse action." *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1012 (N.Y. 2004); *see* N.Y. EXEC. LAW § 296 (specifically including "labor organization[s]" within the NYSHRL's retaliation provisions). Assuming a plaintiff makes this showing, the burden then shifts to the union to "present legitimate, independent, and nondiscriminatory reasons to support its actions." *Adeniran v. State*, 965 N.Y.S.2d 163, 165 (2d Dep't 2013). In turn, a plaintiff then has "the obligation to show that the reasons put forth were merely a pretext." *Id.*; *see also Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013)

---

[6] As with its *Garmon* preemption arguments, Local 52 cautions this Court to beware of "artful pleading." Mot. at 11. In doing so, it cites the Ninth Circuit case, *Columbia Export Terminal, LLC v. International Longshore and Warehouse Union*, 23 F.4th 836, 842-43 and n.3 (9th Cir. 2022). *See* Mot. at 11. *Columbia Export* is distinguishable, however, for at least two reasons: first, as mentioned above, this Circuit has not adopted such a standard of review (and, indeed, that is evident in the absence of citations to Second Circuit cases in *Columbia Export* itself, which collects cases). *Columbia Export*, 23 F.4th at 843 n.3. Second, *Columbia Export* addressed civil RICO claims, not ERISA claims. *Id.* at 844-45. Moreover, Local 52 concedes that "Section 301 preemption typically applies to state law claims," not federal claims. Mot. at 11.

(acknowledging that "[f]ederal and state law retaliation claims are reviewed" under the same burden-shifting standard)

As outlined above, Schneider alleges he was retaliated against for filing a claim of race discrimination and interference with business relations in New York State Supreme Court.  SAC ¶ 88; *see also id.* ¶ 157; Opp'n at 11 ("Mr. Schneider's NYSHRL retaliation claim originates from Local 52's reaction to the discrimination lawsuit under the NYSHRL that he filed against Local 52, and not from any interpretation of the IATSE Constitution.").  Specifically, he notes that he filed his lawsuit in September 2019, SAC ¶ 88; *see* Verified Complaint ¶ 32, *Schneider*, 716010/2019 (N.Y. Sup. Ct. Sep. 18, 2019), Dkt. 1, which was then dismissed on October 6, 2020, *see* Order, *Schneider*, 716010/2019 (N.Y. Sup. Ct. Oct. 5, 2020), Dkt. 21; Notice of Entry, *Schneider*, 716010/2019 (N.Y. Sup. Ct. Oct. 6, 2020), Dkt. 22.  Since then, he contends that "the union has failed to offer [him] union membership," SAC ¶ 91, in several ways:

- that before Schneider initiated his lawsuit, Local 52, "in writing, committed to allow [him] to sit for . . . certain upcoming exams," SAC ¶ 92, however, "Schneider has never been afforded an opportunity by Local 52 to take an exam for membership after initiation of his lawsuit," *id.* ¶ 93;

- that Schneider "vested in the union defined benefit pension plan in or around September 2022," *id.* ¶ 86, and was "due to receive an invitation to vested status membership from Local 52 in April 2024" as "part of a government investigation and settlement of Local 52's admissions practices," *id.* ¶ 95, like Bishop and Wilson did; and

- that "a Local 52 official placed Mr. Schneider on a 'do not hire/no work' list." *Id.* ¶ 94.

As set out in the Second Amended Complaint, certain aspects of this retaliation claim are preempted.  To the extent that Plaintiffs allege that Local 52 retaliated against Schneider because he had "vested in the union," *id.* ¶ 86, and was "due to receive an invitation to vested status membership," *id.* ¶ 95, like Bishop and Wilson but was blocked from doing so because of his lawsuit, those allegations are preempted under LMRA § 301 because they do involve determining

17

whether Local 52 violated article 7, section 21, of the IATSE Constitution. *See, e.g.*, *Whitehurst*, 928 F.3d at 209 (determining that the plaintiff's NYSHRL discrimination claim was preempted because it specifically referenced "bad faith interpretation" of the collective bargaining agreement and that "her entire complaint [was] predicated on discrimination that allegedly occurred during the grievance process, the contours of which [were] completely dependent on an interpretation of the [collective bargaining agreement]"). However, the other two allegations—that Local 52 denied Schneider the opportunity to sit for examinations, SAC ¶¶ 92-93, and that Local 52 put him on a "do not hire/no work list," *id.* ¶ 94, do not require interpretation of the IATSE Constitution. *See Lingle*, 486 U.S. at 409-10 (Even if resolution of the LMRA § 301 claim and retaliation claim "require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes."); *see, e.g.*, *id.* at 406-07 (finding that a claim of "retaliatory discharge for filing a worker's compensation claim" under Illinois law was not preempted by LMRA § 301 because its elements did not "require[] a court to interpret any term of a collective-bargaining agreement"); *Cruz v. SEIU Local 32BJ*, 19 Civ. 11836, 2021 WL 3604661, at *5 (S.D.N.Y. Aug. 12, 2021) (finding that resolving the plaintiff's NYSHRL discrimination claim based on disparate treatment similarly did not "depend upon the meaning of the CBA").

Accordingly, the Court denies Local 52's Motion to the extent that it seeks to dismiss the Second Amended Complaint for lack of subject-matter jurisdiction; however, it grants the Motion with regard to the portion of the NYSHRL retaliation claim relating to Schneider's vested status.

## B. Motion to Dismiss for Failure to State a Claim

Local 52 next asserts that all of Plaintiffs' causes of action should be dismissed for failure to state a claim under Rule 12(b)(6).

### 1. First Cause of Action: LMRA § 301

Local 52 challenges Plaintiffs' LMRA § 301 claim on two grounds: first, because Plaintiffs have not shown that Local 52's "interpretation of the constitution is unreasonable, or that [Local 52] acted in bad faith," Mot. at 13; *see id.* at 13-14, and second, because the claim as to Bishop is time barred, *see id.* at 15-17.

### a. Plaintiffs Have Plausibly Stated an LMRA § 301 Claim.

In opposition to Local 52's first argument, Plaintiffs assert that they have plausibly stated a claim because "requiring Plaintiffs to 'show' unreasonableness or bad faith at the pleading stage . . . is premature." Opp'n at 13. Plaintiffs contend that they have sufficiently alleged that "Local 52 breached the IATSE Constitution . . . by failing, for years, to abide by Article 7, Section 21 . . . , causing Plaintiffs years of lost job opportunities, compensation and advancement." *Id.* at 12.

Plaintiffs have plausibly stated an LMRA § 301 claim. In cases where § 301 is the basis for jurisdiction, courts "apply federal common law to determine the meaning of the agreement." *Dist. Lodge 26, Int'l Ass'n of Machinists*, 610 F.3d 44, 51 (2d Cir. 2010) (quoting *Baldracchi v. Pratt & Whitney Aircraft Div.*, 814 F.2d 102, 104 (2d Cir. 1987)); *see generally* 20 WILLISTON ON CONTRACTS § 55:20 (4th ed. 2025). In doing so, courts "look to traditional state contract law, when it is not inconsistent with federal labor policy, to form the content of the federal common law governing labor agreements." *Dist. Lodge 26*, 610 F.3d at 51 (quoting *Loc. 377 v. 1864 Tenants Ass'n*, 06 Civ. 1190(LBS), 2007 WL 634751, at * 11 (S.D.N.Y. Mar. 1, 2007)). To plausibly state a claim for breach at the motion to dismiss stage, Plaintiffs must allege the existence of a contract, their performance thereunder, Local 52's breach thereof, and resulting damages. *See Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 134-35 (S.D.N.Y. 2012); *Trs. of United*

*Food & Com. Workers Loc. 2013 Health & Welfare Fund v. Americare, Inc.*, 22-CV-62 (EK)(PK), 2025 WL 2783247, at \*3 (E.D.N.Y. Sep. 30, 2025) (applying New York contract law to an LMRA § 301 claim at the motion to dismiss stage).

Plaintiffs have made this showing.  They allege that they are third-party beneficiaries of the IATSE Constitution, SAC ¶ 147, which provides for immediate membership without a vote upon an individual's having "achieved vested status in a Local or national defined pension plan," *id.* ¶ 46 (quoting IATSE Constitution, art. 7, § 21).  Plaintiffs assert that "by failing to immediately take [them] into membership . . . after they . . . vested," Local 52 "breached the terms of the IATSE Constitution, namely Article 7, Section 21," *id.* ¶ 146.  As a result, Plaintiffs were "monetarily harmed."  *Id.* at 1.  As stated above, "beneficiaries of provisions of [union constitutions] may bring suit on these contracts under § 301."  *Wooddell*, 502 U.S. at 101; *see also Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 865 n.7 (1987) (acknowledging in the context of § 301 claims that "third-party beneficiaries to a contract ordinarily have the right to bring a claim based on the contract"); *Bldg. Indus. Elec. Contractors Ass'n v. Patriot Elec. Corp.*, 22-CV-07653 (NGG) (RML), 2024 WL 22762, at \*5 (E.D.N.Y. Jan. 2, 2024) ("Individuals may even bring suits against their own union for violation of a 'union constitution' that governs a parent union and its local chapters because the governing document may be considered a 'contract between labor organizations.'" (quoting *Shea v. McCarthy*, 953 F.2d 29, 30-31 (2d Cir. 1992))); *see also, e.g.*, *Puchalski v. FM Constr., Inc.*, 18-CV-1596-SJB, 2020 WL 6727777, at \*5 (E.D.N.Y. Nov. 16, 2020) (determining that a collective bargaining agreement applied to members and nonmembers of a union where the nonmembers were intended beneficiaries of the agreement).  Indeed, Local 52 does not challenge Plaintiffs' standing to sue.  *See* Mot. at 13-14; Reply at 6-7.  Nor does Local 52 argue that Plaintiffs failed to exhaust their remedies under the IATSE

20

Constitution. *See* Mot. at 13-14; Reply at 6-7; *see also* Opp'n at 12 n.2. *See generally Tobin v. Barry*, 678 F. Supp. 1018, 1021 (S.D.N.Y. 1987) ("A court may require a union member to exhaust intraunion remedies prior to bringing suit against his union. This requirement is within the court's discretion; it is not absolute." (citing *Johnson v. Gen. Motors*, 641 F.2d 1075, 1078 (2d Cir. 1981))).

Local 52's arguments to the contrary are unavailing. As Plaintiffs correctly point out, *see* Opp'n 13-14, Local 52 relies on cases decided at different litigation stages, which applied other, often more demanding, standards than that applicable to a motion to dismiss, *see* Mot. at 13-14; Reply at 6-7; *Troman v. Am. Fed. of State, Cnty. & Mun. Emps.*, 16-CV-6948 (JPO), 2017 WL 2881154 (S.D.N.Y. July 6, 2017) (deciding a motion for summary judgment); *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465 (2d Cir. 1999) (same); *Landers v. Samuelson*, 12–CV–703(DLI)(LB), 2012 WL 825117 (E.D.N.Y. Mar. 8, 2012) (deciding a motion for a temporary restraining order); *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415 (N.Y. 1995) (addressing an order dismissing a complaint after a jury verdict). Moreover, while *Local Unions 20 v. United Brotherhood of Carpenters*, 223 F. Supp. 2d 491, 500 (S.D.N.Y. 2002), did involve a motion to dismiss, as well as a cross-motion for summary judgment, the quotation Local 52 includes in its Reply is taken out of context. *See* Reply at 6-7 (citing *Local Unions 20*, 223 F. Supp. 2d at 500-01, for the proposition that "[a]bsent bad faith or special circumstances, an interpretation of a union constitution by union officials . . . should not be disturbed by the court"). That quotation originates from a persuasive, but nonbinding, Ninth Circuit decision and is situated within a larger discussion about LMRA § 301 preemption. *Loc. Unions 20*, 223 F. Supp. 2d at 500-01. It was not used as a standard at the motion to dismiss stage.

21

### b. Bishop's LMRA § 301 Claim Is Timely.

Next, Local 52 argues that Bishop's "Section 301 claim is time-barred by the six-year statute of limitations" because Bishop "knew or should have known of the alleged breach" in June 2018, when he allegedly vested into the MPI Plan. Mot. at 15; *see id.* at 15-17. In opposition, Plaintiffs assert that Bishop's claim is timely because his "claim accrued on April 26, 2024," when he received the unsolicited email from Local 52 notifying him that he had attained vested status. Opp'n at 15; *see id.* at 15-18.

Bishop's LMRA § 301 claim is timely.[7] "Since the LMRA does not provide a statute of limitations," the Supreme Court has long acknowledged "the traditional practice of borrowing analogous state statutes. Under New York law, the constitution and bylaws of a labor union are treated as contracts between a union and its members. Thus, the courts in this Circuit have assigned a six-year statute of limitations to pure Section 301 claims, including claims for breach of a union constitution." *Tobin*, 678 F. Supp. at 1022 (citations omitted); *see UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966) ("Accordingly, since no federal provision governs, we hold that the timeliness of a [§] 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations."); *accord Phelan v. Loc. 305 United Ass'n of Journeymen*, 973 F.2d 1050, 1061 (2d Cir. 1992).

The parties agree that the six-year statute of limitations applies to Bishop's LMRA § 301 claim. *See* Mot. at 15; Opp'n at 15. However, they disagree as to when that statute of limitations starts running. In articulating the applicable standard, both parties cite *Tobin* for the proposition that the "running of the statute of limitations begins when the plaintiffs 'knew or reasonably should

---

[7] "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n. 12 (2d Cir. 2014).

have known that a breach had occurred." *Tobin*, 678 F. Supp. at 1022 (quoting *Santos v. Dist. Council of United Bhd. of Carpenters & Joiners*, 619 F. 2d 963, 969 (2d Cir. 1980)); *see* Mot. at 15; Opp'n at 15. But this language and similar language in *Flanigan v. International Brotherhood of Teamsters, Loc. No. 671*, 942 F.2d 824, 828-29 (2d Cir. 1991), which Plaintiffs also cite, *see* Opp'n at 15-16, arise in the context of "hybrid 301" claims, which involve *both* a contractual LMRA § 301 claim *and* a duty-of-fair-representation claim. *Tobin*, 678 F. Supp. 1022; *see Flanigan*, 942 F.2d at 827; *see also Santos*, 619 F.2d at 969 (developing the standard while discussing the duty-of-fair-representation piece of a hybrid 301 claim); *Ramey v. Dist. 141, Int'l Ass'n of Machinists*, 378 F.3d 269, 278 (2d Cir. 2004) ("For more than twenty years we have consistently held that, *in a suit alleging a breach of the duty of fair representation* brought by union members against their union, 'the cause of action accrue[s] no later than the time when [the union members] knew or should have known that . . . a breach ha[s] occurred." (alteration in original) (emphasis added) (quoting *Santos*, 619 F.2d at 969)). This distinction is meaningful because "hybrid 301" cases are subject to a shorter, six-month statute of limitations, derived from NLRA § 10(b), *see DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170-71 (1983), whereas "pure 301" cases, which solely bring a contractual claim, borrow their statute of limitations from state contract law, *see Tand*, 324 F. Supp. 2d at 383-84. Plaintiffs do not dispute that they have asserted a "pure 301" claim. *See* Opp'n at 15.

Local 52 also cites New York law for the proposition that "knowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in a contract action." *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 165 (E.D.N.Y. 2010) (quoting *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 987 (N.Y. 1993)); *see* Mot. at 15-16. In New York, "[a] cause of action for breach of contract accrues and the statute of

23

limitations commences when the contract is breached." *Williams v. Newburgh Enlarged City Sch. Dist.*, 803 F. App'x 485, 490 (2d Cir. 2020) (quoting *T&N PLC v. Fred S. James & Co. of N.Y., Inc.*, 29 F.3d 57, 59 (2d Cir. 1994)).

Under either standard, Bishop's LMRA § 301 claim falls within the six-year statute of limitations because the contract at the heart of this dispute—the IATSE Constitution—was only adopted by Local 52 on July 29, 2021, SAC ¶ 43; *id.*, Exhibit B at i, Dkt. 21-2. In other words, the "binding contract between IATSE and Local 52," which Plaintiffs seek to enforce as third-party beneficiaries, only came into being in 2021 and could only be breached thereafter. SAC ¶¶ 43, 45; *see Dist. Lodge 26*, 610 F.3d at 51; *Trs. of United Food*, 2025 WL 2783247, at *3. *See generally* 23 WILLISTON ON CONTRACTS § 63:1 (4th ed. 2025). Bishop, in turn, commenced this action on May 27, 2025, approximately four years later. *See generally* Compl. Applying either standard thus leads to the same outcome: his claim is timely. Local 52's assertion that the breach occurred in June 2018, when Bishop vested into the union's plans but when the IATSE Constitution had not yet been adopted by Local 52, is unavailing.

Accordingly, the Court denies Local 52's Motion to the extent that it seeks to dismiss Plaintiffs' § 301 cause of action for failure to state a claim.

### 2. Second and Third Causes of Action: ERISA §§ 510 and 502(a)(3)

Local 52 additionally challenges Plaintiffs' ERISA claims on two bases: first, because Local 52 is not an "employer" under ERISA § 510 and Plaintiffs have failed to allege discriminatory intent, Mot. at 17-20, and second, because Plaintiffs' ERISA §§ 510 and 502(a)(3) claims seek the wrong remedy, *id.* at 20-22 (quoting SAC ¶ 155).

24

### a. Plaintiffs Plausibly State an ERISA § 510 Claim.

Regarding the first argument, Plaintiffs reply that "Local 52, as a labor union, may be held liable under ERISA Section 510" and that "Plaintiffs have plausibly alleged that Local 52 had specific intent to interfere with the ERISA protected rights of non-union members to advantage union members." Opp'n at 18.

Plaintiffs plausibly state a claim under ERISA § 510. To start, the text of the statute is broad. In relevant part, it provides:

> It shall be unlawful for *any person* to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140 (emphasis added). Although Local 52 is correct to note that "Section 510 was designed primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights,'" *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980)); *see* Mot. at 17, Congress chose expansive language: "person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization," 29 U.S.C. § 1002(9). Congress did not, as Local 52 incorrectly implies, use the word "employer" or limit this cause of action to employers. Mot. 17; Reply at 9; *see Blake v. H-2A & H-2B Voluntary Emps' Beneficiary Ass'n*, 952 F. Supp. 927, 933 (D. Conn. 1997) ("This Court . . . holds that section 510 may apply to defendants other than employers. The statute by its very terms applies to 'persons,' which is defined by ERISA. Had Congress intended to limit the applicability of section 510 to 'employers,' a term also defined by ERISA, it could have done so as it has in other discrimination statutes."

25

(citations omitted)); *Swanson v. U.A. Loc. 13 Pension Plan*, 779 F. Supp. 690, 702 (W.D.N.Y. 1991) (concluding similarly).  ERISA § 510 claims against unions therefore have been permitted to proceed in this Circuit beyond the pleading stage, *see, e.g.*, *Webb v. Loc. 1814*, CV-94-2739 (CPS), 1996 WL 75302, at *13 (E.D.N.Y. Feb. 9, 1996); *cf. Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 64-65 (2d Cir. 2006) (holding that a local union qualified as an ERISA "fiduciary"), although they are less commonly brought than ERISA § 510 claims against employers.

Plaintiffs have additionally alleged specific intent.  "An essential element of plaintiff's proof under the statute is to show" that the challenged conduct was "at least in part motivated by the specific intent to engage in the activity prohibited by § 510."  *Dister*, 859 F.2d at 1111. Because the existence of specific intent "is seldom the subject of direct proof," *id.* at 1111, courts analyze these claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *see Gioia v. Forbes Media LLC*, 501 F. App'x 52, 54 (2d Cir. 2012); *Dister*, 859 F.2d at 1111-12.  A plaintiff must therefore first "put[] forth a prima facie case of discrimination and the defendant then provides a nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to prove that the defendant's proffered reason is pretextual." *Gioia*, 501 F. App'x at 54.  At the pleading stage, a plaintiff "need only allege facts that render it plausible that [the defendant] was at least partially motivated by an intent to interfere with [his] pension rights."  *Zahler v. Empire Merchs., LLC*, 11–CV–3163 (JG)(CLP), 2012 WL 273698, at *11 (E.D.N.Y. Jan. 31, 2012).

Plaintiffs have made this showing.  As described above, Plaintiffs allege that "[t]he number of production hours an applicant, permit, or member earns on each production is very important because production hours determine benefits levels within the union's health, benefits and pension

26

plans." SAC ¶ 39. Relatedly, the length of time an individual contributes to the union's benefit plans matter because the IATSE Constitution purportedly provides for immediate membership without a vote after five years of contributions. *Id.* ¶¶ 41-42. "[S]tatistically," Plaintiffs contend, "Local 52 members work more production hours than non-members." *Id.* ¶ 126 Members are additionally eligible for and allowed to accrue hours for the Local 52 Plan, which "supplement[s] the benefits granted under the MPI Plan and IATSE Plan," *id.* ¶ 129, whereas "[a]pplicants and permits are not eligible for the Local Plan benefits, nor can they accrue time as non-members," *id.* ¶ 133. "Local 52 applicants and permits who have vested" but are "not immediately made members . . . are [therefore] deprived of the right to fully participate in the Local 52 Plan," *id.* ¶ 130. "Local 52 intended to exclude vested permits and applicants from membership because they contribute to the Trust Fund," via a 2.5% gross wage deduction and fees paid to Local 52, "but without benefits, which, mathematically, benefits Local 52 members at the expense of non-union members." *Id.* ¶ 134; *see id.* ¶¶ 124-25. While Plaintiffs "will need to substantiate [their] various allegations with evidence through discovery" and face "a hefty burden" of establishing pretext, these allegations state a plausible claim for relief at this stage in the litigation. *Zahler*, 2012 WL 273698, at *11; *see also Dister*, 859 F.2d at 1115 (discussing the elements of a prima facie case). *Compare, e.g.*, *Marin v. Dave & Buster's Inc.*, 159 F. Supp. 3d 460, 461-62 (S.D.N.Y. 2016) (finding plaintiff made the requisite showing),[8] *and Zahler*, 2012 WL 273698, at *10-11

---

[8] *Marin v. Dave & Buster's Inc.* is instructive. There, the plaintiff plausibly alleged that the defendants "intentionally interfered with her current health-care coverage" by reducing her hours as part of a nationwide effort to lower "future costs that would become associated with the plan's health care coverage." *Marin*, 159 F. Supp. 3d at 461. She asserted that the "discrimination affected her current benefits, in addition to interfering with her ability to attain future benefit rights," and arose "from the employer's unlawful motivation, acting to interfere with either the exercise or the accrual of benefits to which [she] 'may become entitled.'" *Id.* at 462 (quoting 29 U.S.C. § 1140). Here, too, Plaintiffs have alleged that Local 52 interfered with their benefits under the Local 52 Plan by excluding them, and applicants and permits like them, from being able to attain those benefits while simultaneously profiting from their wage deductions. SAC ¶ 134. Notably, Plaintiffs cited this case in their Opposition, *see* Opp'n at 18, but Local 52 failed to distinguish it, *see* Reply at 8-10.

(same)*, with Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost Insulators Loc. 12*, 629 F. Supp. 3d 103, 113 (S.D.N.Y. 2022) (finding plaintiff only offered the "conclusory allegation that defendants 'engaged in a scheme to intentionally interfere with the contractual and vesting rights and benefit entitlements of the Plaintiff'" (citation omitted)).[9]

Accordingly, the portion of Local 52's Motion that seeks to dismiss Plaintiffs' Second Amended Complaint for failure to state an ERISA § 510 claim is denied.

### b. Plaintiffs May Not Seek Monetary Damages Under ERISA §§ 510 and 502(a)(3).

Further, Local 52 argues that Plaintiff's ERISA §§ 510 and 502(a)(3) causes of action should additionally be dismissed because they seek the "wrong" remedy of "the value of 'lost *future* employment benefits under Section 502(a)(3)." Mot. at 20 (quoting SAC ¶ 155). Local 52 argues that "[e]ven if the claim is construed to seek the equitable remedy of specific performance under a contract, that relief is 'not typically available in equity,'" and, in any case, "Plaintiffs' claims cannot survive to the extent they seek non-equitable relief in the form of unawarded benefits and compensatory damages." *Id.* at 20-21 (quoting *Great-West Life & Annuity Ins. v. Knudson*, 534 U.S. 204, 210-11 (2002)). Local 52 adds that Plaintiffs could have brought a claim under ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B) ("ERISA § 502(a)(1)(B)"), for the recovery of benefits but chose not to. Mot. at 21. In opposition, Plaintiffs argue that "ERISA

---

[9] Similar to their preemption arguments, Local 52 additionally asserts that Plaintiffs' ERISA § 510 claim is "more properly construed as a claim for wrongfully withheld benefits," which ERISA § 502, but not ERISA § 510, provides a basis for. Mot. at 19. But Plaintiffs have elected not to assert an ERISA § 502 claim, which, as stated above, is their prerogative. Plaintiffs are "the master of the claim" and may choose to frame their allegations as they wish. *Caterpillar*, 482 at 392. Moreover, as alleged, the ERISA § 510 claim does plausibly state an interference with Plaintiffs' ability to attain their benefits, rather than a mere denial of benefits such as that alleged in *Abe v. N.Y. Univ.*, 14-cv-9323 (RJS), 2016 WL 2757761, at *2 (S.D.N.Y. May 11, 2016, which Local 52 cites, *see* Mot. at 19. *Compare Abe*, 2016 WL 2757761, at *2 (asserting that the plaintiff conflated his ERISA § 510 and ERISA § 502 claims where he alleged his employer refused to pay him benefits after he was terminated), *with Marin*, 159 F. Supp. 3d at 461-62 (holding that the plaintiff plausibly alleged an ERISA § 510 claim where she contended that her employer interfered with her ability to attain benefits by reducing her hours).

28

contemplates that a court may fashion appropriate equitable relief," which "may, under current precedent, include a monetary component." Opp'n at 20; *see id.* at 19-20.[10]

Plaintiffs' request for the "value of lost future employment benefits" under ERISA § 502(a)(3) is improper. Generally, violations of ERISA § 510 "may be enforced by an action under section 502(a)(3), to protect employees from actions designed to prevent the vesting of pension rights." *Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 333 (2d Cir. 1997); *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 145 (1990). ERISA § 502(a)(3) empowers a "participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." When "determining the propriety of a remedy, [courts] must look to the real nature of the relief sought, not to its label." *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003). The Supreme Court has construed ERISA § 502(a)(3) narrowly. *See Great-West Life*, 534 U.S. at 209-10 ("'[E]quitable' relief must mean *something* less than *all* relief." (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 258 n.8 (1993))); *Mertens*, 508 U.S. at 256 (referring to injunctions, mandamus, and restitution as permissible remedies, "but not compensatory damages").

The Supreme Court has largely disallowed money damages owed under a contract under ERISA § 502(a)(3). *Knudson*, 534 U.S. at 210; *Mertens*, 508 U.S. at 261. Section 502(a)(3) "permits money awards only in very limited circumstances," such as restitution. *Gerosa*, 329 F.3d at 321 ("Classic compensatory and punitive damages are never included within 'other appropriate equitable relief.'" (quoting *Mertens*, 508 U.S. at 255)); *see CIGNA Corp. v. Amara*, 563 U.S. 421,

---

[10] The Court construes Local 52's Motion to specifically challenge Plaintiffs' requested remedy of "the value of 'lost *future* employment benefits under Section 502(a)(3)" and not any of the other remedies alleged by Plaintiffs in the Second Amended Complaint. Mot. at 20 (quoting SAC ¶ 155); *see* SAC at 21. The Court, therefore, does not reach those other remedies in its analysis.

441-42 (2011) (discussing the equitable remedies of reformation, estoppel, and surcharge, which may involve a type of monetary remedy).  As Local 52 emphasizes, *see* Mot. at 20-21, Plaintiffs seek, in part, to recover money in the form of "the value of lost future employment benefits," SAC ¶ 155.  As alleged, however, such relief is impermissible.  *See, e.g.*, *Gerosa*, 329 F.3d at 321 (observing that a claim for restitution requires a plaintiff to "show that the defendant has unjustly received from the plaintiff a benefit, such as a payment, or that the defendant holds funds or property that in good conscience should belong to the plaintiff," which Plaintiffs do not allege (citations omitted)); *see e.g.*, *Wegmann v. Young Adult Inst., Inc.*, 15 Civ. 3815 (KPF), 2016 WL 827780, at *5 (S.D.N.Y. Mar. 2, 2016) (denying ERISA § 502(a)(3) relief where the plaintiff sought money damages in the form of benefits owed under the trust plan); *Pelosi v. Schwab Cap. Mkts., L.P.*, 462 F. Supp. 2d 503, 513 (S.D.N.Y. 2006) (similarly denying ERISA § 502(a)(3) relief where the plaintiff sought "'compensation of at least equal to an additional 12-months severance pay, plus COBRA premium payments and other benefits,' as redress for Defendants' alleged discrimination").

Plaintiffs' arguments to the contrary do not compel a different result.  As Defendants emphasize, *see* Reply at 9-10, Plaintiffs concede the impermissibility of this remedy by stating in their Opposition that they "seek to clarify their rights to benefits" and citing ERISA § 502(a)(1)(B). Opp'n at 20.  However, ERISA § 502(a)(1)(B), which Plaintiffs have not asserted here, is the proper vehicle for that remedy, *see Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005).

Accordingly, Local 52's Motion is granted to the extent that it seeks to dismiss the portion of the Second Amended Complaint that requests recovery of the value of lost future benefits.

### 3.  Fourth Cause of Action: NYSHRL Retaliation

Further, Local 52 argues that this Court should dismiss Schneider's NYSHRL retaliation claim for two reasons: (1) it is time barred by a one-year statute of limitations and (2) it fails to "plead a causal connection between a protected activity and an adverse action." Mot. at 22-23. In opposition, Plaintiffs do not address the former but do address the latter: they argue that the "causal link between the protected activity and the adverse employment action is that Mr. Schneider is the only of the three Plaintiffs herein who has yet to receive his union membership." Opp'n at 11.

#### a. Statute of Limitations

At this early stage of the litigation, it is premature for the Court to rule on Local 52's statute-of-limitations defense. The Second Circuit has long held that the "lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 421 (2d Cir. 2008). Generally, that means that a defendant must raise the defense in an answer, rather than a motion to dismiss. *Id.* at 425-26. With that said, a court may consider the affirmative defense "in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id.* at 425; *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").

Local 52's statute-of-limitations defense does not appear on the face of the Second Amended Complaint. NYSHRL retaliation actions are subject to a three-year statute of limitations.[11] N.Y. C.P.L.R. § 214(2); *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir.

---

[11] The NYSHRL provides plaintiffs with an election of remedies: they may seek administrative or judicial review, but not both. N.Y. EXEC. LAW § 297(9); *Moodie v. Fed. Reserve. Bank of N.Y.*, 58 F.3d 879, 882-83 (2d Cir. 1995). Today, the statute of limitations in either context is the same—three years, *see* N.Y. C.P.L.R. 214; N.Y. Exec. Law § 297(5)—however, prior to February 15, 2024, administrative actions for claims other than sexual harassment were subject to a shorter, one-year statute of limitations, *see* Senate Bill S3255, N.Y. STATE SENATE, https://www.nysenate.gov/legislation/bills/2023/S3255 (last visited Mar. 6, 2026) (explaining the legislature's

2023); *see generally* 18A TRACY BATEMAN ET AL., NEW YORK JURISPRUDENCE § 214 (2d ed. 2025). That statute of limitations runs from the date that the claims accrue. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("[C]laims under the NYSHRL and the NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts"). As set out above, Plaintiffs contend that Schneider filed his lawsuit in September 2019, SAC ¶ 88, which was dismissed on October 6, 2020, and that since then Local 52 has declined to offer him "union membership through examination or vesting," *id.* ¶ 91. Focusing solely on the non-preempted, alleged adverse events, Plaintiffs contend that Schneider was not allowed to sit for examinations "[a]fter conclusion of his lawsuit" on October 6, 2020, *id.* ¶ 91; *see id.* ¶¶ 89, 91-93, and that "a Local 52 official placed Mr. Schneider on a 'do not hire/no work' list," *id.* ¶ 94. Plaintiffs initially asserted this NYSHRL retaliation claim in their First Amended Complaint on June 20, 2025. *See* FAC ¶¶ 136-38.

At this level of generality, the Court cannot say when exactly either alleged event took place. Accruing from the only date Plaintiffs provide, which is "[a]fter conclusion of his lawsuit" on October 6, 2020, *id.* ¶ 91, both may exceed the three-year statute of limitations. However, it is not definite on the face of the Second Amended Complaint. At this stage in the litigation, where the Court must draw all inferences in Plaintiffs' favor, dismissal on this basis is not warranted. *See, e.g.*, *Ingenito v. Riri USA, Inc.*, 89 F. Supp.3d 462, 483-84 (E.D.N.Y. 2015) (declining to dismiss where the court did "not have sufficient information to determine whether Plaintiff's NYSHRL claim [was] untimely"); *Arazi v. Cohen Bros. Realty Corp.*, 1:20-cv-8837-GHW, 2022 WL 912940, at *14-15 (S.D.N.Y. Mar. 28, 2022) (declining to dismiss a New York City Human

---

rationale for the change). Because Plaintiffs elected to file in federal court, the pre-February 15, 2024, one-year statute of limitations that Local 52 raises is irrelevant.

Rights claim, which is similarly subject to a three-year statute of limitations, where the complaint was ambiguous as to when all of the events took place).

### b. Causal Connection

Dismissal is, however, warranted for failure to plausibly plead a causal connection. A causal connection can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Here, Plaintiffs opt for the first method: they indirectly allege a causal connection through circumstantial evidence that, like Bishop and Wilson, Schneider was "due to receive an invitation" of membership from Local 52 in April 2024, SAC ¶¶ 95-96, "[h]owever, Local 52 retracted the invitation before it was sent to Mr. Schneider," *id.* ¶ 97. Plaintiffs assert that "[t]he invitation was blocked by union leadership because of Mr. Schneider's earlier lawsuit against the union." *Id.* ¶ 97; *see also* Opp'n at 11 ("The causal link between the protected activity and the adverse employment action is that Mr. Schneider is the only of the three Plaintiffs herein who has yet to receive his union membership.").

Plaintiffs' allegations are insufficient. As stated above, the aspect of the retaliation claim that asserts Schneider should have received an invitation due to his vested status, like Bishop and Wilson, is preempted by LMRA § 301. *See supra* Discussion section A.2. Focusing on the other two alleged actions—that Local 52 denied Schneider membership by both disallowing him to take the membership exam and by putting him on a do not hire/no work list, SAC ¶¶ 82-99—Plaintiffs have failed to specify when those actions took place, which prevents the Court from being able to

33

determine temporal proximity, *see Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir. 2015) ("Although '[w]e have not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship,' the Supreme Court has suggested that 'the temporal proximity must be very close.'" (alteration in original) (citations omitted) (first quoting *Littlejohn*, 795 F.3d at 319; and then quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)); *Agosto v. N.Y.C. Dep't of Educ.*, 24-cv-01738-LDH-LKE, 2026 WL 457087, at *5-6 (E.D.N.Y. Feb. 18, 2026) (determining that a causal connection was not established where the plaintiff similarly failed to "specify a time period of the alleged adverse employment action" and solely noted that "it occurred after [he] filed his complaints").  But even assuming that the time period at issue is sometime between October 6, 2020, and April 2024, temporal proximity is not met.  *See, e.g.*, *Gehlaut v. N.Y.C. Dep't of Educ.*, 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sep. 8, 2025) ("In the absence of other factual allegations supporting causation, the approximately one-year period between Gehlaut's SDHR complaint and the disciplinary charges against him is far too long to support a plausible inference of causation under federal, state, and city law.").  Plaintiffs have similarly failed to adduce any direct evidence of retaliatory animus.

Plaintiffs' arguments to the contrary are not persuasive.  In focusing on comparators, Plaintiffs' Opposition and Surreply cite only two cases for the proposition that comparator evidence is enough: *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349 (S.D.N.Y. 2012), and *Kwan v. Andalex Group LLC*, 737 F.3d 834 (2d Cir. 2013).  Both of these cases, however, support the necessity of temporal proximity when alleging a causal connection indirectly.  In *Kwan*, the court observed that "[t]he three-week period from Kwan's complaint to her termination [was] sufficiently short to make a prima facie showing of causation indirectly through

34

temporal proximity," *Kwan*, 737 F.3d at 845, and in *Malena* the court noted that the plaintiff's two separate complaints to her employer took place "approximately three weeks" and "two days before her termination," *Malena*, 886 F. Supp. 2d at 364.  Neither case relied on comparator evidence alone.  Here, by contrast, Plaintiffs offer no other causation evidence beyond Bishop and Wilson, and the Second Amended Complaint otherwise refers to a vague, multi-year period of time.

Accordingly, the Court grants the portion of Local 52's Motion that seeks dismissal of Plaintiffs' NYSHRL retaliation claim.

## C. Motion to Strike

Finally, Local 52 asks this Court to strike Plaintiffs' class action allegations from the Second Amended Complaint because they "do[] not satisfy the requirements of [Rule 23]."  Mot. at 23-25.  In opposition, Plaintiffs contend that they "have plausibly alleged facts that support the reasonable inference that the Plaintiffs could produce sufficient evidence for class certification."  Opp'n at 20.

The Court declines to rule on this portion of Local 52's Motion.  "In this Circuit, motions to strike class claims are 'disfavored' because they 'require[] a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 166 (S.D.N.Y. 2019) (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013)).  *See generally* 7B WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 1798 (3d ed. 2025) ("Compliance with the Rule 23 prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim or by a summary-judgment motion." (footnote omitted)).  Although such a motion "may be entertained 'if the inquiry would not mirror

35

the class certification inquiry and if resolution of the motion is clear,'" *Talarico*, 367 F. Supp. 3d at 166 (quoting *Kassman*, 925 F. Supp. 2d at 462), that is not the case here.  Local 52's motion to strike is premature.

Accordingly, the portion of Local 52's Motion that seeks to strike Plaintiffs' class action allegations is denied.

## CONCLUSION

For the foregoing reasons, Local 52's Motion is granted in part and denied in part, as follows:

1. Local 52's Motion is DENIED to the extent that it seeks to dismiss the Second Amended Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, except it is GRANTED with regard to the portion of the NYSHRL retaliation claim relating to Schneider's vested status, which is preempted by LMRA § 301.

2. Local 52's Motion is DENIED to the extent that it seeks to dismiss the Second Amended Complaint under Rule 12(b)(6) for failure to state a claim, except it is GRANTED with regard to the remedy seeking the value of lost future benefits under ERISA § 502(a)(3) and the NYSHRL retaliation claim.

3. Local 52's Motion is DENIED to the extent that it seeks to strike Plaintiffs' class action allegations.

SO ORDERED.

_____/s/_____
ORELIA E. MERCHANT
United States District Judge

April 24, 2026
Brooklyn, New York

36