CHARLES LAW, P.C.
Attorneys at Law

Member of the New York Bar

November 20, 2026

**VIA ECF**
Hon. Lara K. Eshkenazi
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Wilson et al. v. IATSE Local 52, No.25-cv-2907 (OEM)(LKE)

Dear Judge Eshkenazi:

We represent plaintiffs Alexander Wilson, Ronald Bishop and Gable Schneider (collectively, "Plaintiffs") in this action. We write in accordance with Your Honor's Individual Rule III.B, Fed. R. Civ. P. 37 and Local Civil Rule 37.2 to respectfully request that the Court compel defendant IATSE Local 52 ("Local 52") to produce the relevant, responsive and non-privileged documents in response to Plaintiffs' requests for production and resolve other ancillary matters relating to discovery in this action. Local 52 has put forth several unavailing excuses to withhold documents crucial to prosecuting this action. On November 3, 2026, the parties met and conferred but were not able to resolve all disputes.

## I. Relevant Background

Local 52 is a labor union that represents technicians in the film and television production industry in New York, New Jersey, Connecticut and several other contiguous states. Local 52 has a sordid history relating to its membership admissions practices, and the union's discrimination against bargaining unit workers who are not union members. In 2012, the New York Attorney General's Office ("NYAG"), after receiving complaints from Black and Latino workers, who had applied to the union for membership, regarding, *inter alia*, nepotism in Local 52's admissions practices that prevented a fair opportunity for membership and work opportunities. In 2014, after a thorough investigation, Local 52 and the NYAG executed an Assurance of Discontinuance ("AOD"), effectively settling the NYAG's investigation regarding Local 52's discriminatory admissions practices. The terms of the AOD stipulated, *inter alia*, that the NYAG would monitor Local 52 with respect to the issues raised in the NYAG's 2012 investigation. In or around March 2021, the NYAG received complaints from

bargaining unit non-union members regarding Article 7, Section 21 of IATSE Constitution, which provides for "immediate" union membership upon vesting into any of IATSE's defined-benefit pension plans. The problem was that Local 52 failed to abide by Article 7, Section 21, instead forcing already vesting-eligible workers to participate in the union's sham admissions process.

The NYAG made inquiries to Local 52 into its Article 7, Section 21 admissions practices. Upon information and belief, Local 52 and the NYAG exchanged extensive communications and documents relating to Article 7, Section 21, including the number of Article 7, Section 21 vesting-eligible workers that Local 52 failed to admit per the IATSE Constitution. Local 52 disclosed to the NYAG material likely to demonstrate numerosity, typicality, commonality and ascertainability of the class in this action, satisfying several elements of the Fed. R. Civ. P. 23 test. Local 52 has no basis to withhold this information because Local 52 waived any attorney-client or attorney work product privilege, if any, by its disclosure of this material to the NYAG. Second, Local 52 has placed this information "at issue" by contending, in its discovery responses, that the NYAG was responsible for its failure to abide by the IATSE Constitution, despite the fact that the NYAG has no authority to allow Local 52 to breach its contractual obligations under the IATSE Constitution.

II. Documents and Communications with the New York Attorney General Relating to Article 7, Section 21 of the IATSE Constitution

Defendant Local 52 must produce documents requested in Plaintiffs' Class-Wide Requests for Production ("Class RFPs") Nos. 3, 4, 5, 7, 8 and 13, which relate to Article 7, Section 21 of the IATSE Constitution. These documents are relevant to the main issues being litigated in this action. *See* a true and correct copy of the relevant excerpts of Plaintiffs' Class RFPs attached hereto as **Exhibit A.**

A. Waiver of Privilege

Local 52 must produce all documents submitted to and communications exchanged with the NYAG relating to the NYAG's inquiry into Article 7, Section 21 vested status membership, because the Second Circuit has soundly rejected selective disclosure as to subsequent private civil litigants. . *In Re Steinhardt Partners L.P.*, 9 F.3d 230 (2d Cir. 1983)(holding that a party that voluntarily discloses attorney work product to an adversarial government investigative entity waives privilege related to that material as to subsequent private civil litigants); *Gruss v. Zwirn,* No. 09-cv-6441 (PGG)(MHD), 2013 U.S. Dist. LEXIS 100012, at *19 (S.D.N.Y. July 10, 2013)("In sum, in *Steinhardt*, the Second Circuit held that a party's voluntary submission to a governmental agency in an adversarial posture of a document containing attorney work product waives work product protection in that document."): *Felder v. Warner Bros. Discovery, Inc.*, No. 23-cv-8487 (AT)(GS), 2025 U.S. Dist. LEXIS 117479, at *55 (S.D.N.Y. June 20, 2025)(holding that the defendant waived its privilege and attorney work product protections by

selectively disclosing protected material to the EEOC). "As a general matter, when a party selectively discloses attorney-client communications to an adverse government entity, the privilege is waived not only as to the materials provided, but also as to the underlying source materials." *Gruss*, 2013 U.S. Dist. LEXIS 100021, at *13; *see also Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218 237 (E.D.N.Y. 2019)("To the extent…that [Defendant] has provided the SEC with any documents or other information that have not been produced to [Plaintiff] in the instant litigation, this Court orders the production of such materials immediately."). Here, Local 52's sole objection to disclosure is that the requested material are protected by attorney-client or attorney work product privilege. Local 52 is mistaken. Assuming, *arguendo*, that such material is privileged, any such privilege was waived, because Local 52 voluntarily disclosed that material to an adversarial governmental entity. As discussed above, selective disclosure to protect a disclosing party's interests, and then refusing to subsequently disclose the same to an adverse party has been soundly rejected in the Second Circuit.

B. <u>At-Issue Waiver</u>

Local 52 must produce all documents submitted to and communications exchanged with the NYAG because Local 52 waived any privilege by putting forth the AOD and NYAG's monitoring as a defense to Plaintiffs' claims. "A party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *Felder,* 2025 U.S. Dist. LEXIS 117479, at *40 (*quoting Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 460 (S.D.N.Y. 2019); *Bharucha v. Siebert Williams Shank & Co*., No. 26-cv-9367 (JAV), 2026 U.S. Dist. LEXIS 54386, at *39 (Mar. 16, 2026)("The only central question in determining whether a party has placed privileged communications at issue is whether the adversary has been made worse off by having to defend against a claim without access to the pertinent privileged materials that might refute the claim."). Here, Local 52 puts its communications and documents exchanged with the NYAG "at-issue" in its responses to Plaintiffs' First Set Requests for Admission ("RFAs") Nos. 5-11. Local 52's reliance on blaming the AOD and the NYAG's inquiry into its admissions practices places its interactions with the NYAG "at issue." *See* a true and correct copy of Local 52's RFA responses attached hereto as **Exhibit B.** Local 52 attempts to shield its breach of Article 7, Section 21 of the IATSE Constitution by relying on the AOD but now refuses Plaintiffs' access to test its defenses of good faith. "[W]hen a party asserts a good faith defense, it may not selectively proffer the information upon which it relied." *Felder,* 2025 U.S. Dist. LEXIS 117479, at *40. In light of the foregoing, Local 52 has waived any privilege in the requested documents.

III. <u>General Fund Bank Statements and Segregated Account Statements</u>

Plaintiffs respectfully request that the Court order Local 52 to produce the relevant, responsive, and non-privileged documents requested in Class RFPs 10 and 11. These Class

RFPs are relevant to Plaintiffs' claims because, as alleged in Plaintiffs' Second Amended Complaint ("SAC")(Dkt. No. 21), Plaintiffs' and other similarly situated non-union members' 2.5% wage withholding contributions were used as a *slush fund* for purposes that went beyond the legal use of agency shop fees collected from bargaining unit workers. (SAC ¶¶ 124, 125, 134). Local 52's characterization of the request as a "fishing expedition," and its contention that it does not have the means to account for union member and non-member contributions is unavailing, as this information is in the possession, custody or control of Local 52. Plaintiffs' Class RFPs 10 and 11 are relevant to Plaintiffs' claims, and Local 52 fails to set forth any cognizable objection to its disclosure. *Trustees of the Sickness and Accident Fund v. Phillips Winston, Inc.* No. 99 Civ. 2929 (AGS), 2000 U.S. Dist. LEXIS 3624, (S.D.N.Y. Jan. 26, 2000)(granting motion to compel discovery of financial records where defendant failed to provide specific objection).

Further, Local 52 is obligated by statute to disclose, upon any suspicion of impropriety, its financial records to Plaintiffs, who recently gained membership to Local 52 for just cause. *See Spinowitz v. Herrity*, 672 F. Supp. 670, 673 (S.D.N.Y. 1987)("A finding of just cause to examine a union's books is not a finding of any impropriety by the union or its officers. All that is necessary is the existence of data on the LM-2, or obtained from other sources, that would put a reasonable union member to further inquiry.").

IV. Walk-In and Waive In Union Members

Plaintiffs respectfully request that the Court compel Local 52, in accordance with Class RFP 17, disclose the identities of Local 52 union members admitted outside of Local 52's recently defunct "sham" admissions process, which included a subjective test of properly tying a knot. This information is relevant to claims in this action to show that Local 52 acted in bad faith and its interpretation of Article 7, Section 21 of the IATSE Constitution was patently unreasonable.

Local 52, upon information and belief, admitted to membership hundreds of members ahead of Plaintiffs without examination whenever it suited their purposes. In its RFA responses, Local 52 explains that Plaintiffs were not qualified for membership into their union departments because they did not pass the department examination *See* **Exhibit B.** Therefore, The requested documents would show whether the union acted unreasonable and in bad faith by admitting unqualified members ahead of Plaintiffs.

V. Local 52 Must Respond to Class Interrogatories

Plaintiffs respectfully request that the Court compel Local 52 to respond to Plaintiffs' Class-Wide Interrogatories because the scope and complexity of this action, which include putative class claims under the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA"), as well as several government investigations of Local 52, necessitate the interrogatories directed at the class allegations. Further, there will be

no substantial burden on Local 52 to answer these interrogatories. See *e.g. In re Indep. Energy Holdings Sec. Lit.,* No. 00 Civ. 6689 (SAS)(MHD), 2022 U.S. Dist. LEXIS 25008, at *4 (S.D.N.Y. Jan. 6, 2003)("[G]iven the complexity of the case, the absence of any suggestion by defendants that the interrogatories in question were otherwise all inappropriate, and our reading of the requests-which do not, for the most part, appear to be unduly burdensome-we direct that defendants respond to those interrogatories."); *Fin. Tech. Partners L.P. v. Circle Internet Fin. Ltd*., No. 24-cv-4717 (VM)(SDA), 2026 U.S. Dist. LEXIS 159144, at *7 (S.D.N.Y. July 17, 2026)(holding that additional interrogatories showing that the benefits of additional interrogatories outweigh the burden on the producing party). This action's May 2026 Scheduling Order contains no provisions for bifurcated discovery, and Local 52 did not request separate discovery phases in this putative class action.

Therefore, class and merits-based discovery are parallel. Plaintiffs are obligated to move to certify the class in this action by January 22, 2027. Plaintiffs, therefore, request that the Court order Local 52 to immediately respond to Plaintiffs Class Interrogatories, which seek information only pertaining to class certification. *See* a true and correct copy of Plaintiffs' Class Interrogatories attached hereto as **Exhibit C**.

## VI. Redacted Documents

Local 52 must produce clean, unredacted documents in response to Plaintiffs' document requests, and may not unilaterally redact documents to the point that said documents are useless. *Trireme Energy Holdings, Inc. v. Imogy Renewables US LLC*, No. 20-cv-5015 (VEG)(BCM), 2022 U.S. Dist. LEXIS 39589, at *5 (S.D.N.Y. March 3, 2022)("[Unilateral redactions based on concerns about personal privacy or business sensitivity are routinely disallowed, particularly where a protective order is in place allowing the parties to designate that information confidential and restrict its use.")(internal quotations omitted). Local 52 has produced documents, without consulting Plaintiffs, that are redacted to the point that the documents are rendered useless. Plaintiffs respectfully request that the Court Order Local 52 to produce clean, unredacted documents that are responsive to Plaintiffs' document requests.

In light of the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' requested relief and grant all such other and further relief the Court deems just and proper.

Thank you for your consideration of this matter.

Respectfully submitted,

F Charles

Fred V. Charles, Esq.